# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MANUEL CAMACHO GARCIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11CR253-3 |
| | ) | 1:14CV150 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 391).[1]  For the reasons that follow, the Court should deny the instant Section 2255 Motion.

## I.  BACKGROUND

The Court (per United States District Judge Thomas D. Schroeder) entered a Judgment sentencing Petitioner, inter alia, to 140 months in prison, after a jury found him guilty of conspiracy to distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  (Docket Entry 246; see also Docket Entry 1 (Indictment); Docket Entry 206 (Verdict); Docket Entries 256-57 & 267-71 (Trial Tr.); Docket Entry 312

---

[1] Parenthetical citations refer to Petitioner's criminal case.

(Sent'g Hrg. Tr.).)[2] After the United States Court of Appeals for the Fourth Circuit affirmed, United States v. Garcia, 538 F. App'x 291 (4th Cir. 2013),[3] Petitioner filed the instant Section 2255 Motion (Docket Entry 391). The United States has responded (Docket Entry 415) and Petitioner has replied (Docket Entry 422).[4]

---

[2] In addition to the cocaine object, the Indictment charged Petitioner (and his 12 co-defendants) with conspiring to distribute 1,000 kilograms or more of marijuana. (Docket Entry 1 at 1-2.) Petitioner and co-defendant Timothy Leon Street proceeded to trial. (See Docket Entries dated Mar. 6, 2012.) At the close of the prosecution evidence, the Court (per Judge Schroeder) granted Petitioner's motion for judgment of acquittal on the marijuana object. (See Docket Entry dated Mar. 15, 2012.)

[3] Petitioner "argue[d] on appeal that the evidence was insufficient to support his conviction because the Government failed to demonstrate that he knowingly joined in the conspiracy." Garcia, 538 F. App'x at 292. The Fourth Circuit, however, "thoroughly reviewed the record and conclude[d] that the Government provided sufficient evidence from which the jury could conclude that [Petitioner] was guilty of the conspiracy charge." Id.

[4] Unlike the instant Section 2255 Motion, which Petitioner executed under penalty of perjury, including separately as to each of the three sets of attached pages (labeled A-1 through A-3 for Ground One, B-1 through B-4 for Ground Two, and C-1 through C-8 for Ground Three) (see Docket Entry 391 at 13, attach. A-3, attach. B-4, attach. C-8), Petitioner signed his Reply without taking an oath or acknowledging perjury penalties (see Docket Entry 422 at 12). Petitioner thus cannot rely on any factual assertions in his Reply to support his claims. See, e.g., Wright v. United States, Nos. 3:10CV174, 3:04CR3, 2011 WL 4852470, at *17 n.7 (S.D. Ohio May 20, 2011) (unpublished) ("[T]he unsworn allegations of [the petitioner's] reply are not an acceptable form of evidence . . . ."), recommendation adopted, 2011 WL 4852495 (S.D. Ohio Oct. 13, 2011) (unpublished); Davis v. United States, No. 4:07CV45CAS, 2009 WL 2836478, at *4 n.2 (E.D. Mo. Aug. 31, 2009) (unpublished) ("[T]he [r]eply is not signed under penalty of perjury and movant's statement therein cannot be accepted as evidence."). The Court, however, may consider the certified court records appended to the Reply (Docket Entry 422-3). See Fed. R. Evid. 803(8) and 902(2).

Before the United States responded, Petitioner submitted a document entitled "Motion under Fed. R. Civ. P. Rule 15(d) for Leave to Supplement Previously Filed Section 2255 Motion to Vacate, Set Aside or Correct Sentence by a Federal Prisoner," to which he attached a DVD-R disk marked "Exhibit A." (Docket Entry 400.) Despite its title, that filing did not seek leave "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," Fed. R. Civ. P. 15(d); to the contrary, it proposed that the Court accept as evidence Exhibit A, described as a "'VIDEO-AFFIDAVIT' offered by Carlos 'Carlitos' Carrillo De La Cruz[, because it] is pertinent and substantially necessary to [] Petitioner['s] argument presented on Ground One, and else where, of his § 2255 motion to vacate, set aside or correct sentence." (Docket Entry 400 at 1; see also id. at 2 ("Petitioner claims he should be allowed to supplement his § 2255 motion to vacate with such Video-Affidavit (Exhibit A) for such would provide substantial evidence and content in support of Petitioner's legal argument presented on Ground One of his § 2255 Motion."), 4 ("Petitioner respectfully claims he should be allowed to supplement his § 2255 Motion as to Ground One with his supplementary appendix, labeled Exhibit A, and which is presented in DVD format.").)

The Court (per the undersigned Magistrate Judge) therefore concluded that said filing did "not constitute a motion for leave

to file a supplemental pleading pursuant to Federal Rule of Civil Procedure 15(d), but rather an amendment to the instant Section 2255 Motion, which (given the timing of submission, i.e., prior to any response by the United States) took effect 'as a matter of course,' Fed. R. Civ. P. 15(a)(1)." (Docket Entry 443 at 2.) Because, however, Exhibit A "consist[ed] entirely (and only of a video recording of an individual speaking in Spanish" (id. at 3), it was stricken "unless Petitioner file[d] (and serve[d] upon the United States) an English translation of Exhibit A, along with an accompanying certification of the accuracy of the translation and the qualifications of the translator, made under oath or penalty of perjury pursuant to 28 U.S.C. § 1746, on or before October 23, 2015" (id. at 5). Within the time allotted, Petitioner filed a document entitled "Certificate of Translation," which states that a federally-certified court interpreter "translated the following documents from Spanish into English . . . [and] certifi[es] to the best of [his] knowledge and abilities that the attached documents are a true and complete translation of the original personal documents." (Docket Entry 444 at 1 (emphasis added).) Although signed by the translator, said certificate contains no acknowledgment of an oath or penalty of perjury. (See id.) As a result, Petitioner has not provided the type of certification required and the previously-ordered striking of Exhibit A stands.

4

Even if the translator had signed the certificate under oath or penalty of perjury, no basis would exist for the Court to accept Exhibit A, because the translation appended to the certificate does not constitute a translation of Exhibit A, as shown by two circumstances. First, as quoted above, the certificate refers to the translation of <u>documents</u>, not of a <u>video recording of someone speaking</u>. Second, the translation includes capitalization errors (e.g., "north Carolina"), along with this "Translator's note": "The original <u>document</u> contained multiple <u>spelling errors</u> which, for ease of reading, were not reproduced in this translation. Where applicable, <u>other errors, such as capitalization</u>, were included to reflect the style of the original." (<u>Id.</u> at 2 (emphasis added).) Video recordings of oral communications (like Exhibit A) do not have capitalization or spelling errors; documents do. Petitioner thus did not file an English translation of Exhibit A, but rather of an unauthenticated, Spanish-language document never presented to the Court. The discussion which follows therefore will not treat that translation or Exhibit A as competent evidence available to support the instant Section 2255 Motion.[5]

_____

[5] Notably, the English translation in question does not reflect that the author of the underlying Spanish-language document signed said document (much less that he did so under oath or penalty of perjury). (<u>See</u> Docket Entry 444 at 2.) As such, that document too would fail to qualify as proper evidence (if Petitioner had timely presented it, along with the translation). <u>See, e.g.</u>, <u>Pizzuti v. United States</u>, Nos. 10 Civ. 199, 1003, & 2585, 02 Cr. 1237, 2014 WL 4636521, at *24 n.17 (S.D.N.Y. Sept. 16, (continued...)

Petitioner's Section 2255 Motion asserts these four claims:

A) "prosecutorial misconduct and deprivation of constitutional rights" (Docket Entry 391, ¶ 12(Ground One));

B) "ineffective assistance of counsel prior to trial" (id., ¶ 12(Ground Two));

C) "ineffective assistance of counsel at trial" (id., ¶ 12(Ground Three)); and

D) "cumulative error" (id., ¶ 12(Ground Four)).[6]

As with Grounds Two and Three, the "deprivation of constitutional rights" (as distinguished from the "prosecutorial misconduct") at issue in Ground One concerns alleged ineffective assistance of counsel. (See id., attach. A-1 - A-3.) Petitioner indisputably possessed a federal constitutional right to effective assistance of counsel in his criminal case in this Court. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14

---

[5](...continued)
2014) ("I decline to give any weight to unsworn statements that do not comply with 28 U.S.C. § 1746."); Isom v. United States, 979 F. Supp. 2d 860, 862 (C.D. Ill. 2013) ("This court concludes that the unsworn letter cannot be considered evidence in support of [the p]etitioner's [Section 2255 m]otion and will not be considered in ruling on the [m]otion."), certificate of appealability denied, No. 13-3731 (7th Cir. Apr. 24, 2014) (unpublished); see also Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (holding that summary judgment principles apply to motions brought under Section 2255).

[6] Petitioner used all capitals in identifying his claims.

(1970).  To establish an ineffective assistance claim, Petitioner must show that his trial-level counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted.  See Strickland v. Washington, 466 U.S. 668, 687-94 (1984).  "Surmounting Strickland's high bar is never an easy task. . . .  [T]he standard for judging counsel's representation is a most deferential one."  Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)).

### A.  Ground One:  Prosecutorial Misconduct/ Ineffective Assistance of Counsel regarding Carlitos

As the specific basis for Ground One, Petitioner has asserted that he "was effectively deprived of the right to confront witnesses against him or call witnesses in his favor by his counsel's failure to call 'Carlitos' to the stand (as well as his [counsel's] failure to even investigate that option despite explicit requests), in addition to the prosecution's deliberate secreting of the witness (despite that it had the man in custody at the time)."  (Docket Entry 391, attach. A-1; see also id.

(identifying witness in question as "Carlos 'Carlitos' Carillo De La Cruz"); id., attach. 3 ("These omissions [by Petitioner's counsel] are unreasonable under Strickland.").) According to Petitioner, "[t]he prosecution used [the] testimony [of his co-defendant, Julisa Anzaldo,] to draw a connection between her communications with [Petitioner] and her later receipt of cocaine by alleging that at [Petitioner's] instruction she met with 'Carlitos,' who delivered the contraband to her." (Id., attach. A-1 (internal citation omitted).) In terms of factual matter supporting the claim(s) in Ground One, Petitioner has alleged that:

1) "'Carlitos' was fully identified and available, having been detained in the Alamance County Jail during the time leading up to trial" (id., attach. A-2);

2) "in spite of [Petitioner's] explicit and repeated instruction, [his] counsel did not investigate or call [Carlitos]" (id.; see also id., attach. A-3 ("Counsel should have interviewed 'Carlitos' and pressed the Government for information deriving from or about this person through whom [Petitioner] was to be implicated. Counsel, at the very least, should have raised the apparent Brady[ v. Maryland, 373 U.S. 83 (1963)] violation based on the prosecution's failure to provide 'Carlitos' or information regarding him to the defense."));

3) "[t]he prosecution was obviously aware of the presence of 'Carlitos' in the county jail, and knew that its witness, Anzaldo,

8

would link [Petitioner] to the substantive offense through the alleged activities of 'Carlitos' . . . [but] did not bring 'Carlitos' as a witness for its own case because his testimony would have shown Anzaldo's to be false" (id., attach. A-2); and

4) "'Carlitos' would have denied that he met anyone at [Petitioner's] direction, much less for the exchange of any illicit substance, and would have recounted the details of the dates and times pertinent to and in rebuttal of Anzaldo's claims" (id., attach. A-3; see also id., attach. A-2 ("[Carlitos] would have excoriated Anzaldo's statements with direct exculpatory testimony.").

Petitioner's instant, inter-related ineffective assistance of counsel and prosecutorial misconduct claims fail as a matter of law. First, assuming Petitioner expressed to his counsel an interest in calling Carlitos as a witness,[7] "[w]here a petitioner faults counsel for not calling a witness, the petitioner must provide 'concrete evidence of what the witness would have testified to in exculpation,' so that the reviewing court can adequately assess the significance of the decision not to call the witness." Davis v. Clarke, No. 3:13CV119, 2014 WL 693536, at *4 (E.D. Va. Feb. 21, 2014) (unpublished) (emphasis added) (internal brackets omitted) (quoting United States v. Terry, 366 F.3d 312, 316 (4th

_____

[7] Petitioner's counsel has sworn to the contrary. (Docket Entry 415-1, ¶ 3.)

Cir. 2004)), <u>appeal dismissed</u>, 577 F. App'x 157 (4th Cir. 2014). Petitioner's bald assertion that Carlitos would have contradicted Anzaldo (or otherwise exculpated Petitioner) does not constitute such "concrete evidence."

Indeed, that assertion does not qualify as evidence at all, because, although offered under penalty of perjury (Docket Entry 391, attach. A-3), it fails to demonstrate that Petitioner possessed personal knowledge of whether (much less how) Carlitos would have testified and/or that Petitioner could give admissible, competent testimony about such matters. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); <u>see also</u> Rule 12, Rules Governing § 2255 Proceedings ("The Federal Rules of Civil Procedure . . ., to the extent that they are not inconsistent with any statutory provisions or these [R]ules, may be applied to a proceeding under these [R]ules."); <u>United States v. Lee</u>, 943 F.2d 366, 368 (4th Cir. 1991) (holding that summary judgment principles apply to motions under Section 2255); <u>United States v. Carter</u>, No. 3:07CR230HEH, 2013 WL 394717, at *2 (E.D. Va. Jan. 31, 2013) (unpublished) ("[The petitioner] previously submitted his own affidavit with his § 2255 Motion. Nevertheless, the facts offered by affidavit or sworn declaration . . . 'must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" (quoting Fed. R. Civ. P. 56(c)(4))).[8]

Further, Petitioner has conceded that, at trial, the United States introduced evidence that Carlitos was "under investigation in connection with the conspiracy." (Docket Entry 391, attach. A-1; see also Docket Entry 415 at 4 ("The record in this case indicates . . . 'Carlitos' was involved in the drug conspiracy . . . ." (citing Docket Entry 268 at 34-35)).) Given that circumstance, the Court reasonably may conclude (particularly in

---

[8] The conclusion that Petitioner did not present competent evidence of what, if any, testimony Carlitos would have given also precludes reliance on Petitioner's above-quoted assertion that the United States knew Carlitos's "testimony would have shown Anzaldo's [testimony] to be false" (Docket Entry 391, attach. A-2). Additionally, Petitioner has offered no proper evidence as to what, if anything, the United States actually knew about Carlitos's whereabouts during the pendency of Petitioner's case (see id., attach. A-1 - A-3); instead, Petitioner has tendered only unsupported declarations that the United States engaged in the "deliberate secreting of [Carlitos] (despite that it had [him] in custody at the time" (id., attach. A-1) and that the United States "was obviously aware of the presence of 'Carlitos' in the county jail" (id., attach. A-2). Moreover, the Alamance County court records appended to Petitioner's Reply reflect that Carlitos spent approximately a month in local custody on a state misdemeanor charge of contributing to the delinquency of a minor in early 2011 (i.e., from January 23 to February 21, 2011) and another month in custody on state misdemeanor drug and stolen property charges in late 2011 (i.e., from October 9 to November 9, 2011), after which he went into the custody of immigration authorities. (See Docket Entry 422-3 at 2-5.) It thus does not appear that Carlitos was in custody in Alamance County either at the time of the return of Petitioner's Indictment (in July 2011 (Docket Entry 1)) or for nearly four months preceding the commencement of his trial (see Docket Entries dated Mar. 6, 2012).

light of the lack of any competent contrary showing by Petitioner) that, if called as a witness, Carlitos would have invoked his Fifth Amendment right against testifying. See Cole v. United States, Nos. C 09-2062-MWB, CR 06-2046-MWB, 2010 WL 5463119, at *8-9 (N.D. Iowa Dec. 29, 2010) (unpublished) ("[The petitioner] next argues that his trial attorney provided him with ineffective assistance by failing to call [a witness who] . . . would have testified that the drugs found in [the petitioner's] residence belonged to [the witness] and not [the petitioner]. . . . [I]t is quite likely that [the witness] would have taken the fifth amendment with regard to his own involvement with any of the drugs . . . ."). Moreover, the United States apparently would not have granted Carlitos immunity (see Docket Entry 415 at 5) and the Court likely could not have compelled the United States to do so, see United States v. Gravely, 840 F.2d 1156, 1160 (4th Cir. 1988) (discussing significant limitations on judicial authority to mandate grants of immunity).

Simply put, Petitioner has not satisfied Strickland because he has not shown that any prejudice resulted from the failure of his counsel to call Carlitos as a witness. See Galloway, 749 F.3d at 241 ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or

12

unreliable." (internal quotation marks omitted)).  The lack of any showing of prejudice associated with Carlitos's absence from the trial similarly defeats the prosecutorial misconduct claim presented in Ground One.  See United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) ("To prevail on a claim of prosecutorial misconduct, a defendant must show . . . conduct [that] prejudiced the defendant to such an extent as to deprive the defendant of a fair trial."); see also Kyles v. Whitley, 514 U.S. 419, 434-41 (1995) (explaining that prosecutorial misconduct claim based on suppression of exculpatory evidence requires proof of a reasonable possibility of a different outcome); United States v. Aleman, 548 F.3d 1158, 1164 (8th Cir. 2008) ("[The defendant] only speculates that interviews of [the undisclosed] individuals would have provided evidence favorable to his defense, however, and mere speculation is not sufficient to sustain a Brady claim." (internal ellipses and quotation marks omitted)).[9]

In sum, the Court should reject Ground One.

---

[9] Petitioner's statement under penalty of perjury that, before trial, he gave "explicit and repeated instruction[s to his] counsel [to] investigate or call [Carlitos]" (Docket Entry 391, attach. A-2; see also Docket Entry 422 at 6 ("In fact, Petitioner did tell [his counsel] about Carlitos and where he was at that time.")) also defeats any prosecutorial misconduct claim premised on any alleged lack of disclosure by the United States regarding Carlitos.  See United States v. Hicks, 848 F.2d 1, 4 (1st Cir. 1988) (rejecting Brady claim where the defendant knew about the potentially helpful witness); see also United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990) ("Furthermore, the Brady rule does not apply if the evidence in question is available to the defendant from other sources." (internal quotation marks omitted)).

13

B.  Ground Two:  Ineffective Assistance of Counsel before Trial

In connection with Ground Two, Petitioner has identified these three alleged, pretrial errors by his counsel:

i) failure to respond to the offer by the United States "that [Petitioner] plead guilty to both objects of the conspiracy, and be sentenced to 10 years, in exchange for information incriminating [his co-defendant] brother . . . [with] a counter-offer involving dismissal of one object in exchange for a plea on the substantive [sic] offense" (Docket Entry 391, attach. B-1; see also id. (asserting that, pursuant to such counter-offer, Petitioner would have received "beneficial recommendations and a reduction for acceptance of responsibility . . . likely nett[ing] a sentence of 120 months, as compared to the 140 months [he] received");

ii) failure "to move for dismissal of the marijuana count [sic]" (id., attach. B-2; see also id. ("Investigation and research would have shown (as a Rule 29 motion later showed) that insufficient evidence existed for [the marijuana object]")); and

iii) failure to oppose Petitioner's joint trial with co-defendant Timothy Leon Street (id., attach. B-3).

The Court should deny Ground Two as these claims lack merit.

### i.  Failure to Make a Plea Counter-Offer

Petitioner's first claim warrants no relief in light of the lack of evidence the United States would have agreed to dismiss the marijuana object (much less to make "beneficial recommendations"

14

that would have led to a lesser sentence), particularly given his refusal (by which he stands) to discuss the activities of a co-defendant. (See id., attach. B-1 - B-2.)[10] Petitioner thus cannot meet Strickland's prejudice prong. See United States v. Basham, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)); see also Bowens v. United States, Nos. 5:12CV123RLV, 5:07CR50RLV-DSC-14, 2015 WL 3882342, at *6 (W.D.N.C. June 16, 2015) (unpublished) ("[T]here is no Supreme Court precedent which holds that counsel was ineffective for failing to negotiate a plea agreement that the defendant would find favorable. And more to the point, there is no evidence in the record that the Government ever offered any plea deal [he would have accepted] . . . ."), appeal filed, No. 15-7176 (4th Cir. July 28, 2015).

_____

[10] Moreover, "to receive [an acceptance of responsibility] reduction, Petitioner would have had to admit his guilt. He does not do this even now . . . ." Arcila-Pedraza v. United States, Nos. 1:09CV138, 1:07CR35-2, 2009 WL 3228192, at *2 (M.D.N.C. Sept. 28, 2009) (unpublished) (internal citation omitted), recommendation adopted, slip op. (M.D.N.C. Jan. 12, 2011). To the contrary, Petitioner has asserted that he possesses a "defense of innocence" (Docket Entry 422 at 3), has argued that false testimony by Anzaldo represented the only evidence against him (see Docket Entry 391, attach. A-1 - A-3), and has contended that his counsel and the United States kept him from proving his innocence (see id., attach. A-1 - A-3, C-7 - C-8). Those positions also refute Petitioner's conclusory declaration that his "[c]ounsel['s] advoca[cy] for putting the prosecution to its burden of proof [and] asserti[on] that the evidence was insufficient . . . effectively coerced [Petitioner] to trial without ensuring that the decision derived from an informed, reasoned choice . . . ." (Id., attach. B-2.)

## ii.  Failure to File Pre-trial Motion to Dismiss Marijuana Object

The second, above-quoted ineffective assistance claim (i.e., that Petitioner's counsel should have "move[d] for dismissal of the marijuana count [sic] pre-trial" based on "insufficient evidence" (Docket Entry 391, attach. B-2)) fails for want of proof of deficient performance and prejudice, because "[t]here is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992); accord United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011); United States v. Moore, 563 F.3d 583, 586 (7th Cir. 2009); United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001); United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996); United States v. Gadsden, Crim. No. WDQ-11-302, 2013 WL 3776994, at *3 (D. Md. July 17, 2013) (unpublished); United States v. Witasick, No. 4:07CR30, 2008 WL 1924023, at *2 (W.D. Va. Apr. 28, 2008) (unpublished).[11]

## iii.  Failure to Request Separate Trial from Street

As to the third (and final) claim within Ground Two, Petitioner's counsel did not provide ineffective assistance by

---

[11]  To the extent some courts permit consideration of evidentiary proffers (made by or with the consent of the United States) in connection with motions to dismiss indictments, see United States v. Souder, Nos. 1:08CR136-1 & 2, 1:08CR275-1 & 2, 2009 WL 88919, at *7 (M.D.N.C. Jan. 12, 2009) (unpublished) (discussing cases), Petitioner's instant claim still provides no basis for relief because he has not shown that the United States would have made any such pretrial proffer or agreed to any such procedure in this case (see Docket Entry 391, attach. B-2 - B-3).

16

opting against moving for a separate trial from co-defendant Street. "There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993). Furthermore, "joinder is highly favored in conspiracy cases, over and above the general disposition towards joinder for reasons of efficiency and judicial economy." United States v. Tedder, 801 F.2d 1437, 1450 (4th Cir. 1986).

Petitioner theorizes that his counsel nonetheless should have requested a separate trial because "the immense weight of the evidence against Street so dramatically overshadowed [Petitioner's] degree of culpability" (Docket Entry 391, attach. B-3); however, that consideration actually weighs against a finding of ineffective assistance, as recently well explained by a neighboring court:

> There is an old adage that there is safety in numbers. [The p]etitioner's counsel could reasonably have believed . . . that the vast majority of the evidence at trial addressed the conduct of [the petitioner's co-defendants], whose conduct was inarguably the subject of greater and stronger direct evidence than that of [the petitioner]. Accordingly, with the bulk of the evidence admitted against his codefendants and only one Governmental witness testifying against [the petitioner], [the p]etitioner's counsel may have adopted the strategy . . . that the evidence against [the p]etitioner, when the jury compared that evidence to the evidence offered against [the co-defendants], was simply insufficient to convict [the petitioner]. Had [the p]etitioner prevailed upon his attorney as claimed and been the only person sitting at the defense table, all jurors would have been focused exclusively on him throughout the trial. Counsel apparently felt that this strategy was unsound. . . . Given that trial counsel are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success, the [c]ourt concludes that

17

> the performance of [the p]etitioner's trial attorney did not fall below the standard of objective reasonableness.

Shippy v. United States, Nos. 1:13CV38MR, 1:09CR23MR1, 2015 WL 3751768, at *7 (W.D.N.C. June 16, 2015) (unpublished) (internal brackets, citations, footnote, and quotation marks omitted), appeal dismissed, 613 F. App'x 272 (4th Cir. 2015); see also Ratliff v. United States, Nos. 4:11CV70034TLW, 4:08CR372TLW, 2013 WL 1567405, at *3 (D.S.C. Apr. 15, 2013) (unpublished) (denying relief based on "assert[ion] that [the petitioner's] counsel was ineffective in failing to seek severance at trial, where [the p]etitioner claim[ed] his codefendants 'carried 90% of the conspiracy evidence'"), appeal dismissed, 548 F. App'x 97 (4th Cir. 2013), cert. denied, ___ U.S. ___, 135 S. Ct. 135 (2014); Collins v. United States, Civ. Action No. 1:06-490, Crim. Action No. 1:02-102, 2009 WL 3186792, at *12 (S.D.W. Va. Sept. 30, 2009) (unpublished) ("There is no right to severance because the evidence is stronger against one defendant . . . .").

In addition, at Petitioner's trial, the Court (per Judge Schroeder) instructed the jury in the following fashion:

> As you know, there are two defendants being tried together in this case. Therefore, you must be careful to give separate consideration to the evidence supporting each charge against each individual defendant.
>
> In considering each charge against each defendant separately, do not think of the defendants as a group or assume that because one [of them] may be guilty of a particular charge another must also be guilty. Instead, you should only return a verdict of guilty if the evidence proves all of the elements of a particular

18

> charge against that individual defendant beyond a
> reasonable doubt.

(Docket Entry 268 at 7; accord Docket Entry 205 at 2.) "The Supreme Court has recognized that 'less drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice.' [Petitioner] fails to argue that the limiting instruction given in this case did not cure any prejudice that might have existed from being tried with his co-defendant[]." Cavillo-Rojas v. United States, Nos. 7:08CR139FL, 7:13CV50FL, 2013 WL 4461551, at *4 (E.D.N.C. Aug. 20, 2013) (unpublished) (internal brackets and citation omitted) (quoting Zafiro, 506 U.S. at 539). To conclude, "[b]ecause nothing indicates that a motion to sever would have been successful, or that any prejudice resulted from the joint trial, [Petitioner] . . . fails to state a claim of ineffective assistance arising from this asserted error." Id.

## C. Ground Three: Ineffective Assistance of Counsel at Trial

Ground Three alleges that Petitioner's counsel provided ineffective assistance by:

i) "fail[ing] to object to or move to suppress inadmissible evidence" (Docket Entry 391, attach. C-1);

ii) "fail[ing] to raise that crucial transcribed phonecalls were corrupt[,] . . . not challeng[ing] the proficiency of the prosecution witness's interpretation of audio evidence . . . [, and not] recogniz[ing] the import of the content of the transcripts [of audio recordings]" (id., attach. C-2 - C-3; see also id., attach.

19

C-3 - C-4 ("Related is counsel's failure to object to the Court's admonition to the jury to ignore any perception they may themselves have of the audio evidence . . . ." (internal citation omitted)); id., attach. C-6 ("[C]ounsel should have procured and submitted alternate interpretations of the audio recordings . . . . Counsel should have prepared call transcripts . . . .");

iii) making a "Rule 29 sufficiency argument [that] was lacking" (id., attach. C-4);

iv) "present[ing] no evidence or testimony to rebut the Government's suggestion that the communications [between Petitioner and Anzaldo] were subtextual [references to drug activity]" (id., attach. C-5; see also id., attach. C-7 ("[A]lthough counsel made an attempt to address the hearsay element of Anzaldo's interpretation [of the audio evidence], he botched the effort by not preparing or offering any evidence in the alternative.")); and

v) "fail[ing] to apprise [Petitioner] of his right to choose to testify in his defense" (id., attach. C-7).

These five claims all fall short as a matter of law and, therefore, the Court should reject Ground Three.

### i.  Failure to Object to Inadmissible Evidence

The first of Petitioner's Ground Three claims lacks merit because he has not established that the United States introduced any inadmissible evidence that undermined his defense. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel was not

constitutionally ineffective in failing to object . . . [if] it would have been futile for counsel to have done so . . . ."); see also Galloway, 749 F.3d at 241 ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)).  In support of this claim, Petitioner has alleged that "a phonecall (#3806) between Anzaldo and [a co-defendant], which discussed familial ties and gatherings, and named [Petitioner] along with other relatives, had no bearing on criminal activity, but enabled the Government to make the impression to the jury of [Petitioner's] greater representation and connectivity in the overall body of evidence."  (Docket Entry 391, attach. C-1.)  In fact, as the United States has documented, "[t]hat call was played by [Petitioner's counsel] during his cross-examination of [] Anzaldo, not by the Government as Petitioner claim[ed] in his [instant Section 2255 Motion]."  (Docket Entry 415 at 12 (citing Docket Entry 256 at 100).)  Because the United States offered no evidence in that instance, Petitioner's counsel could not have objected.[12]

---

[12] Even if the United States had introduced the recording in question, Petitioner would have possessed no ground for objection, because "[e]vidence relating to [his] associations . . . was certainly relevant to whether he was participating in a drug
(continued...)

Petitioner's complaint about his counsel's failure to object to testimony in which Anzaldo (a) "mentioned people engaged in the conspiracy, but did not in that overall listing mention [Petitioner]" (Docket Entry 391, attach. C-1), (b) reported that she engaged in a transaction "for [other co-defendants] not at the direction of [Petitioner]" (id.), and (c) "described that she was 'talking with' 'all' of these people on behalf of [a co-defendant] but in her enumeration of those persons did not mention [Petitioner] once" (id.) similarly fails to show ineffective assistance. That testimony tended to bolster Petitioner's position at trial (i.e., that he did not join any conspiracy), such that his counsel had no cause to object; indeed, any defense objection to the cited testimony reasonably could have drawn Petitioner's ire.

Next, Petitioner has asserted that the United States "introduce[d] [him] in Anzaldo's testimony [] by improper means . . . without laying a foundation for its question to Anzaldo identifying [Petitioner] -- to which counsel inexcusably failed to

---

<sup>12</sup>(...continued)
conspiracy." United States v. Agbada, No. 93-5201, 9 F.3d 1544 (table), 1993 WL 466196, at *2 (4th Cir. Nov. 12, 1993) (unpublished); see also United States v. Lagos, Nos. 89-5207, -5211, -5219, 912 F.2d 464 (table), 1990 WL 123867, at *4 (4th Cir. Aug. 28, 1990) (unpublished) ("[A]lthough evidence of an association among co-conspirators is alone insufficient to establish the existence of a criminal conspiracy, it is a relevant factor which may be considered by the jury."); United States v. Collazo, 732 F.3d 1200, 1205 (4th Cir. 1984) (holding that essential elements of conspiracy "can be shown by circumstantial evidence such as [the defendant's] relationship with other members of the conspiracy [and] the length of the association").

object." (Id., attach. C-1 - C-2.) The record reflects that Anzaldo testified to the following material matters:

a) she pleaded guilty to participating in a conspiracy to distribute drugs with various individuals, including Candelario Camacho Garcia (her cousin, whom she called "Candy), Petitioner, and Street (Docket Entry 268 at 77-79);

b) her involvement in the drug conspiracy began when she drove Candy to meet with co-conspirators, including Street (whom she knew as "Primo") (id. at 80-81);

c) at Candy's direction, she then started picking up drug proceeds from Street or a female acting on Street's behalf (id. at 89-90, 106, 109), as well as delivering cocaine to Street (id. at 96-97);

d) Petitioner (whom she called "Meno") was Candy's brother and her cousin (id. at 113);

e) "Candy called [her] and told [her] to call [Petitioner] because . . . they were going to set up for 10 kilos of cocaine" (id. at 114);

f) she "called [Petitioner] to set up when [she] was going to go pick up the cocaine" (id.);

g) Petitioner "told [her] to go pick it up at this old house where they used to stay . . . [and] Carlitos, he came out of the woods . . . when [she] was going into the house, and that's where he gave [her] the 10 kilos" (id. at 115; see also id. ("Q . . .

23

[D]id [Petitioner] tell you who was going to meet you?  A  No, he didn't tell me the name.  He just said somebody is going to meet you there."）;

h) she thereafter "let [Petitioner] know that [she] had gotten the package" (id.);

i) "at the same time [she] was talking to [Petitioner], [she] was talking to [Street], and [Street] told [her] to meet the girl [from whom she previously picked up drug proceeds]" (id. at 118);

j) after she "delivered the package to the girl, . . . [she] called [Street] and [she] told him that [she] gave the bags to the girl" (id. at 118-19);

k) she never "pick[ed] up the payment for the 10 kilograms that [she] delivered . . . [b]ecause the girl got arrested" (id. at 119); and

l) she "had to call [Petitioner] and tell him that the girl had got arrested" (id. at 120).

Petitioner has not explained how such testimony lacked a proper foundation.  (See Docket Entry 391, attach. C-1 - C-2.)  To the extent Petitioner's "foundation" argument revolves around his contention that Anzaldo's testimony constituted a "convoluted web implicating [Petitioner], spun entirely by this one witness, [that] connected people and events outside of her ken and sans corroborative evidence" (id., attach. C-2), any objection of that sort would have failed.  "The only real issue was whether the

24

[challenged] evidence was true. That was not an issue of admissibility but an issue of credibility for the jury." Jones v. Capital Transp. Inc., No. 4:14cv15-RH/CAS, 2015 WL 6126832, at *5 (N.D. Fla. Oct. 16, 2015) (unpublished); see also United States v. Mazard, 486 F. App'x 812, 815 (11th Cir. 2012) ("[The defendant's] credibility argument goes to the weight of [the witness's] testimony, not to its admissibility. Relevant evidence is admissible unless it is prohibited by the Federal Rules of Evidence or some other federal law. Fed. R. Evid. 402. Given that [the defendant] does not contend that [the witness's] testimony was irrelevant or that it was excludable under any other evidentiary rule, we have no basis for concluding that the district court abused its discretion in admitting it."); United States v. Clark, 541 F.2d 1016, 1018 (4th Cir. 1976) ("Although the testimony of an accomplice should be examined with care and received cautiously, it is sufficient to sustain a conviction, even though uncorroborated, if it convinces a jury of the defendant's guilt beyond a reasonable doubt."); United States v. Memoli, No. 3:13-CR-214(VLB), 2014 WL 5313707, at *10 (D. Conn. Oct. 16, 2014) (unpublished) ("[T]he reliability of a witness goes to the weight of evidence, not its admissibility, and the determination of [a witness's] credibility is the proper realm of the jury, not the [c]ourt.").

In addition, according to Petitioner, "the prosecution impermissibly implied to the jury via its misleading questioning

that [Petitioner] had met Anzaldo to provide narcotics, when all the evidence was to the contrary and instead implicated 'Carlitos.' Counsel did not object to this . . . ." (Docket Entry 391, attach. C-2 (internal citations omitted).) The United States, however, has shown that "[t]he claim that counsel failed to object to a question asked of [] Anzaldo regarding Anzaldo having received the ten kilograms of cocaine from Petitioner [rather than from Carlitos] is meritless; counsel did object. The Government then rephrased the question." (Docket Entry 415 at 12 (internal citations omitted) (citing Docket Entry 268 at 123-24).)[13]

Finally (as to this species of alleged ineffectiveness), Petitioner grouses that his counsel "did not object to a reference by Anzaldo to a phonecall indicating what [Petitioner] 'said,' which (a) did not exist and (b) impermissibly placed hearsay on the record." (Docket Entry 391, attach. C-2 (internal citations

---

[13] To the extent the instant ineffective assistance claim relies on the undeveloped assertions that Petitioner's counsel should have objected to "further misleading questioning" and to Anzaldo's "testimony about what other participants in phonecalls believed" (Docket Entry 391, attach. C-2), it "is vague, conclusory, speculative, and unsupported and fails for all these reasons," Cabrera v. United States, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished); see also United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the [d]istrict [c]ourt." (internal quotation marks omitted)); Cano v. United States, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) ("[The p]etitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the Strickland analysis."), recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2009).

omitted).) The question of whether Anzaldo testified truthfully about the existence and/or substance of any telephone call properly fell to the jury; it did not represent a basis for evidentiary objection. See, e.g., Jones, 2015 WL 6126832, at *5 ("The only real issue was whether the [challenged] evidence was true. That was not an issue of admissibility but an issue of credibility for the jury."). Nor did Anzaldo's recounting of inculpatory statements by Petitioner (including his reports of statements by other conspirators) run afoul of hearsay restrictions. See Fed. R. Evid. 801(d) ("A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and . . . was made by the party . . . or . . . by the party's coconspirator during and in furtherance of the conspiracy."); see also Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

The record thus refutes Petitioner's allegation that his counsel "failed to object to or move to suppress inadmissible evidence" (Docket Entry 391, attach. C-1).

### ii. Failure to Properly Deal with Audio Evidence

As concerns audio evidence, Ground Three initially charges Petitioner's counsel with ineffective assistance for "fail[ing] to raise that crucial transcribed phonecall<u>s</u> were corrupt." (<u>Id.</u>, attach. C-2 (emphasis added).) In terms of specifics, however,

Petitioner has pointed to only <u>one</u> allegedly defective transcript, as to which he contended "a substantial portion of the call is missing prior to the second page. Closer review of the original would have been mitigatory or exculpatory in value, or in the alternative would have stricken this call from the record." (<u>Id.</u>, attach, C-2 - C-3.) The United States properly has observed that Petitioner "provide[d] absolutely no support for this claim, and it is, in fact, without merit." (Docket Entry 415 at 13 (documenting that transcript at issue, available in the record of Petitioner's direct appeal, Joint App. at 852-55, <u>United States v. Garcia</u>, No. 12-4420 (4th Cir. Feb. 15, 2013), "do[es] not contain any omissions" and that "a Spanish-speaking translator[] reviewed all of the transcripts that were submitted to the jury as substantive evidence . . .[,] made the corrections she deemed necessary and rendered her opinion that the transcripts were accurate . . .[, and] did not indicate that the transcript for that call contained any omissions" (citing Docket Entry 256 at 38-43)).)

According to Petitioner, his counsel also acted ineffectively because he "did not challenge the proficiency of the prosecution witness's interpretation of audio evidence, nor recognize the import of the content of the transcripts." (Docket Entry 391, attach. C-3.) Specifically, Petitioner has objected that his counsel "did not question Anzaldo's proficiency in the language or, indeed, whether her identification of [him] might be suspect.

28

Counsel failed to adequately address the issue of the transcripts already containing names by the time Anzaldo reviewed them." (Id.) Petitioner, however, has not come forward with any evidence to suggest that any basis existed to "question Anzaldo's proficiency in the language" (id.) or "her identification of [him]" (id.). (See id.)[14] Further, Street's counsel adequately informed the jury that "the transcripts already contain[ed] names by the time Anzaldo reviewed them" (id.). (See Docket Entry 257 at 43-44.) Petitioner has not even hypothesized as to what more his counsel profitably could have done on that front. (See Docket Entry 391, attach. C-3.) In essence, Petitioner has asked the Court to assume that, had his counsel handled these matters in some unspecified, other manner, the jury would not have found him guilty. The Court should decline that request because, "to succeed on his ineffective assistance claims, [Petitioner] is not entitled to satisfy the prejudice requirement through rank speculation . . . ." Basham, 789 F.3d at 375 (internal quotation marks omitted).

Based on that same principle, the Court should deny relief as to Petitioner's allegation(s) that his "counsel was deficient in not requesting an opportunity to assert alternative interpretations

---

[14] Anzaldo testified that she lived in Mexico as a child (Docket Entry 268 at 76), she recently spent an extended period of time there (id. at 107), and she shared a familial relationship with Petitioner (id. at 113), circumstances that would have undercut any effort by Petitioner's counsel to challenge Anzaldo's knowledge of Spanish or familiarity with Petitioner's voice.

29

to the transcripts . . . [and in] fail[ing] to object to the Court's admonition to the jury to ignore any perception they may themselves have of the audio evidence, which natural perception could have benefitted [Petitioner] in not having been forged by the coached prosecution witness." (Docket Entry 391, attach. C-3 - C-4.) Petitioner has not identified one example of any "alternative interpretation[]" (id., attach. C-3) his counsel could have included in a proposed transcript or of any "natural perception" (id., attach. C-4) the jury could have drawn from any recording that differed from an admitted transcript. (See id., attach. C-3 - C-4; see also id., attach. C-6 (declaring that "counsel should have procured and submitted alternate interpretations of the audio recordings [and] . . . should have prepared call transcripts," but without pointing to a single, specific "alternate interpretation" his counsel plausibly could have proffered).) Likewise, Petitioner improperly seeks to establish prejudice based on "rank speculation," Basham, 789 F.3d at 375 (internal quotation marks omitted), by baldly declaring that a bench conference "occurred within the hearing of . . . Anzaldo, which put her on notice regarding her crucial role in shaping the jury's perception of the communications at issue" (Docket Entry 391, attach. C-4).

In light of these considerations, Petitioner has not made out a colorable ineffective assistance claim in regards to his counsel's handling of audio evidence-related issues.

30

### iii. Failure to Make an Adequate Rule 29 Argument

Petitioner has alleged that his "counsel's Rule 29 sufficiency argument was lacking." (<u>Id.</u>) This claim founders on <u>Strickland</u>'s prejudice prong because, when Petitioner "argue[d] on appeal that the evidence was insufficient to support his conviction," <u>Garcia</u>, 538 F. App'x at 292, the Fourth Circuit "thoroughly reviewed the record and conclude[d] that the Government provided sufficient evidence from which the jury could conclude that [he] was guilty of the conspiracy charge," <u>id.</u> Petitioner cannot re-litigate that matter via the instant Section 2255 Motion. <u>See</u> <u>United States v. Dyess</u>, 730 F.3d 354, 360 (4th Cir. 2013) ("[I]t is well settled that [a petitioner] cannot circumvent a proper ruling on direct appeal by re-raising the same challenge in a § 2255 motion." (internal ellipsis and quotation marks omitted)); <u>Torres v. United States</u>, Nos. 1:06CR255, 1:09CV226, 2010 WL 2342462, at *3 (W.D.N.C. June 8, 2010) (unpublished) ("While [the p]etitioner raises his present claim under the rubric of ineffective assistance of counsel, because he challenged precisely the same underlying conduct on appeal and the challenge was rejected, [the p]etitioner, at a minimum, cannot establish that he was prejudiced."), <u>appeal dismissed</u>, 397 F. App'x 913 (4th Cir. 2010).

### iv. Failure to Offer Evidence Countering Anzaldo's Explanation of Her Communications with Petitioner

Ground Three contains a further claim of ineffective assistance premised on the fact that Petitioner's "counsel

31

presented no evidence or testimony to rebut the Government's suggestion that the communications [between Petitioner and Anzaldo] were subtextual [references to drug activity]." (Docket Entry 391, attach. C-5; see also id., attach. C-7 ("[A]lthough counsel made an attempt to address the hearsay element of Anzaldo's interpretation [of the audio evidence], he botched the effort by not preparing or offering any evidence in the alternative.").)   This claim falls short because, rather than identifying specific evidence his counsel purportedly should have introduced, Petitioner merely has asserted in a generalized fashion that "additional phonecalls or witnesses, e.g. [Petitioner's] family, would have easily explained [his] talks with [Anzaldo]" (id., attach. C-6).  See Davis, 2014 WL 693536, at *4 (holding that petitioners who fault their counsel for failing to present evidence must make "concrete" showing regarding the evidence counsel could have presented); see also Basham, 789 F.3d at 375 ("[T]he petitioner] is not entitled to satisfy [Strickland's] prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)).

v.  Failure to Advise Petitioner of His Right to Testify

As a final matter, Ground Three seeks relief based on the allegation that Petitioner's "counsel failed to apprise [him] of his right to choose to testify in his defense, particularly mid-trial.  If [Petitioner] had known that he could, if through no other avenue, present to the jury his side of the story by taking

the stand after the presentation (or lack of presentation) of all other evidence, he definitely would have made that choice." (Docket Entry 391, attach. C-7.) During the trial, the Court engaged Petitioner in the following colloquy that conclusively refutes his instant claim:

> THE COURT: All right. Let me make inquiry then of both of the defendants for the record as to their right to testify.
>
> [Petitioner], if you would stand for a moment, please, sir. Good morning to you. Now, you have your interpreters here that are available for you if you need them for any purpose, but you have already indicated that you are proceeding in English so far. Do you understand me?
>
> [Petitioner]: Yes.
>
> THE COURT: It has now gotten to this point in the case where you will have an opportunity to testify, if you wish to do that. Do you understand that?
>
> [Petitioner]: Yes, sir.
>
> THE COURT: And do you understand that under the United States Constitution you have the right to testify in your own defense, if you choose to do that? Do you understand that?
>
> [Petitioner]: Yes, sir.
>
> THE COURT: And do you understand that nobody can force you to testify?
>
> [Petitioner]: Yes, sir.
>
> THE COURT: Do you understand that whether or not you testify is simply your decision, and it is a decision nobody can make for you; it is your decision? Do you understand that?
>
> [Petitioner]: Yes, sir.

33

THE COURT:  Have you talked with [your counsel] about whether or not you believe it is in your best interest to testify in this case?

[Petitioner]:  Yes.  I told him I didn't want to testify.

THE COURT:  My question to you is whether you believe you have fully discussed with [your counsel] whether or not you should testify?  Do you believe you have done that?

[Petitioner]:  Yes.

THE COURT:  And have you had enough time to do that?

[Petitioner]:  Yes.

THE COURT:  All right.  And now that you've discussed that with him, have you made a decision about that?

[Petitioner]:  Yes.

THE COURT:  And what is that decision?

[Petitioner]:  Not to testify.

(Docket Entry 270 at 20-21 (emphasis added).)

### D.  Ground Four:  Cumulative Error

The entire basis for Ground Four appears as follows:  "The cumulative effect of the preceding errors and omissions by counsel, the prosecution, and the judiciary process comprised substantial detriment to [Petitioner], violating his Constitutional rights including the right to equal protection under the law, and resulted in the effective deprivation of a fair trial and an illegally-imposed sentence."  (Docket Entry 391, ¶ 12(Ground Four)(a).) Petitioner cannot prevail on a "cumulative error" theory given the complete meritlessness of all of his claims (as detailed in Subsections II.A.-C.).  See United States v. Basham, 561 F.3d 302,

34

330 (4th Cir. 2009) ("Pursuant to the cumulative error doctrine, the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. Generally, however, if a court determines that none of a defendant's claims warrant reversal individually, it will decline to employ the unusual remedy of reversing for cumulative error. To satisfy this requirement, such errors must so fatally infect the trial that they violated the trial's fundamental fairness. When none of the individual rulings work any cognizable harm, it necessarily follows that the cumulative error doctrine finds no foothold." (internal brackets, citations, ellipses, and quotation marks omitted)).

### III.  CONCLUSION

Petitioner has not shown entitlement to collateral relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 391) be denied without a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 16, 2015